

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

Grover Sellers
FIRST DANIEL
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant
State Superintendent of Public Instruction
Austin 11, Texas

Opinion No. 0-6893

Re: Payment of transportation
aid under Rural Aid Bill
(Sec. 1 of Art. 1, Chap. 361,
Acts 1945, Reg. Ses.) on
scholastics of Alton Inde-
pendent School District con-
tracted to Mission Independ-
ent School District.

Dear Sir:

Your recent communication to this department reads as
follows:

"Under the provisions of Article I, Section 1, of
S. B. No. 167, an Act of the 49th Legislature 'All school
districts in this state which have received transporta-
tion aid only on a transportation budget, during the bi-
ennium ending August 31, 1945, notwithstanding any of
the provisions of any preceding or subsequent provision
of this Act, shall be authorized to receive the same type
of aid which it formerly received to the extent of Two
Dollars ($2.00) per month per pupil on pupils actually
transported who live two and one-half ($2½) miles or more
from the school to which they are transported, provided
it can show transportation budgetary need therefor,' the
Mission School District receives transportation aid only
on students who are transported more than $2½ miles
from school.

"Following the provisions of Article VIII of the Act
mentioned above, the Board of Trustees of the Mission
Independent School District contracted with the Alton In-
dependent School District. The census rolls of the two

districts have been combined, the per capita apportionments of both districts are being sent to the Mission Independent School District, and the local taxes of both districts are turned over to and administered by the receiving district.

"In all respects the children of the Alton Independent School District have been considered, for the duration of the contract, as students of the Mission Independent School District. In figuring the transportation aid which the Mission Independent School District is to receive from the State Equalization Fund, may we consider the Mission Independent School District as enlarged for the school year 1945-1946 through contractual agreement with the Alton Independent School District, and may transportation aid only be paid on the Alton pupils on the same basis as for the pupils of the Mission Independent School District under the terms of Article I, Section 1, quoted above. * * *"

In our Opinion No. 0-4855, approved September 24, 1942, we held that a sending district was not destroyed by the transfer of its entire scholastic enrollment to another district. The transfer involved was under the Rural Aid Bill, Acts 1941, Chap. 549. Said opinion also held that such transferred scholastics residing in the confines of the contracting sending district were residents of said district for general purposes. It further held that they were residents of the receiving district "insofar as the payment of transportation aid is concerned." (Underscoring supplied)

The foregoing opinion was based on the following facts:

On September 10, 1941, the Shanklin Independent School District in Bell County contracted its entire enrollment to the Belton Independent School District in said county. After said opinion was rendered, it developed that prior to August 1, 1941, two pupils residing in said Shanklin District were, by parent application, transferred to Salado, also a Bell County school district. Said transfer was effected in accordance with the provisions of Article 2696, Vernon's Annotated Civil Statutes.

Regarding the status of said two pupils, we held in Opinion No. 0-4855-A, approved October 7, 1942, that they were not residents of the Belton district for any purpose. The supporting reason was that their names were not on the enrollment of the Shanklin District at the date of contractual transfer to Belton.

Our Opinion No. 0-4916, approved October 22, 1942, held that the contracting receiving district becomes the home district of pupils on the census rolls of the sending district "insofar as the payment of transportation aid is concerned." (Underscoring supplied). The next to the last paragraph of said opinion reads as follows:

"This conclusion would in no way affect the right and power to transfer under the general law, and would in no way vitiate any such transfer. See Article 2696, Vernon's Annotated Civil Statutes. It would affect only the granting of transportation aid. In other words where a transfer is made and the census rolls combined under Section 2 of Article VIII, transportation aid may not be granted for a pupil on such rolls who attends a grade in a school district other than the receiving district under the transfer agreement if such grade is taught in the receiving district. Section 2, Article V, H. B. 284, Acts 47th Leg., R. S."

Regarding the boundaries of contracting receiving districts, their effect on amount of transportation aid, the following paragraphs are quoted from Opinion No. 0-5740-A:

"It is to be regretted that the Legislature did not express its intention more clearly in Article 5, Section 1 of Chapter 373, Acts 48th Legislature, wherein is found the following language:

" ' . . . provided further that all school districts containing one hundred square miles of territory or more or has less than one (1) enumerated scholastic per square mile may receive Two Dollars and Twenty-five cents ($2.25) per month per pupil as transportation aid when there is a need shown therefor as provided herein.'

"Evidently the Legislature had in mind the area to be served and did not intend to restrict the application of the proviso to legally created school districts.

"There would be no good reason to say that a district containing 100 square miles may receive $2.25 per month per pupil and then to say that if such district contracts to teach all of the pupils residing in additional area of 50 square miles the receiving district can receive only $1.75 per month for transporting the pupils residing in such additional territory. It is a

rule of construction that if a statute is ambiguous and is susceptible of two meanings; one of which is logical and reasonable and the other leads to an absurdity, that meaning which is logical and reasonable will be given it. We think a construction which would limit the application of the statute to regularly created school districts would lead to an absurdity. We think that the legislature intended to make the proviso applicable to any teaching unit regardless of whether it is a consolidated district, or a district grouped by the County School Board or by a valid contract.

" 'It is a rule that the intention of the Legislature, once ascertained, is the law.' Lone Star Gas Co. v. State, 153 S. W. (2d) 681-692 (Sup. Court)

'We reaffirm our previous holding in opinion No. 0-5740 that the transfer of the entire scholastic enrollment does not constitute a consolidation of the two districts, but opinion No. 0-5740 is modified to the extent that we hold that the Legislature intended to provide that any teaching unit containing 100 square miles or more may receive an additional 50¢ per month per pupil for transportation aid when there is a need shown therefor as provided in the State Aid law, regardless of 'whether the districts are grouped by consolidation, by action of the County School Board or by valid contracts.' "

The transfer of entire districts by contract are governed by similar, if not identical, provisions of the Rural Aid bills of the 47th, 48th and 49th Legislatures. The same legal principles apply to and result from contractual transfers effected under either of said bills insofar as transportation aid is concerned. Your quotation from Art. I, Section I of S. B. No. 167, 49th Legislature, is verbatim, and will not be repeated in this opinion. The language quoted is clear and unambiguous. In applying the conclusions reached in our above referred to opinions, it obviously follows that transportation aid only may be paid on the Alton pupils on the same basis as for the pupils of the Mission District. We do not hold, however, that the Mission District is enlarged as such as a result of the contractual agreement. The area served by the Mission District is enlarged, but the District is not. Subject to this qualification, and provided further, of course, that the Mission District can show transportation budgetary need regarding the Alton pupils, the question submitted is answered in the affirmative.

The conclusions reached in the preceding paragraph are limited to the following facts which we have received from Mr. King, the Legislative Accountant, from Mr. Barber, the Superintendent of the Mission Independent School District, and from Mr. Trimble, Assistant State Superintendent of Public Instruction:

The Alton Independent School District is not a Rural Aid District for any purposes. The Mission Independent School District received transportation aid only on a transportation budget during the biennium ending August 31, 1945. Mission is now claiming transportation aid under the provisions of Article 1, Section 1 of S. B. No. 167, 49th Legislature, Regular Session. Based on these facts, the Mission District can only receive transportation aid on its own and the contracted Alton pupils to the extent of Two ($2.00) Dollars per month per pupil.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (signed) L. H. Flewellen
Assistant

LHF:EP:mwb

APPROVED NOV 8, 1945

(signed) Carlos Ashley

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
Opinion
Committee

By BWB
Chairman